Matter of McMahon (2020 NY Slip Op 02120)





Matter of McMahon


2020 NY Slip Op 02120


Decided on March 26, 2020


Appellate Division, First Department


Per Curiam



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 26, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Hon. Sallie Manzanet-Daniels, Justice Presiding,
Judith J. Gische
Angela M. Mazzarelli
Troy K. Webber
Ellen Gesmer, Justices.


M-8310

[*1]In the Matter of Martin F. McMahon, (admitted as Martin Francis McMahon), an attorney and counselor-at-law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Martin F. McMahon, Respondent.



Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Martin F. McMahon, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the First Judicial Department on February 22, 1971.



Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Raymond Vallejo, of counsel), for petitioner.
Respondent pro se.



PER CURIAM


Respondent Martin F. McMahon was admitted to the practice of law in the State of New York by the First Judicial Department on February 22, 1971, under the name Martin Francis [*2]McMahon. Respondent maintains an office for the practice of law in Washington, D.C.
The Attorney Grievance Committee ("Committee") seeks an order, pursuant to Judiciary Law § 90(2) and the Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.13, suspending respondent from the practice of law for 60 days, predicated upon similar discipline imposed by the Virginia State Bar Disciplinary Board and directing him to demonstrate why discipline should not be imposed for the underlying misconduct or, in the alternative, sanctioning him as this Court deems appropriate.
Respondent, who heads a law firm in Washington D.C., is licensed to practice law in New York and Washington, D.C., but not Virginia. In November 2017, a Subcommittee of the Virginia State Bar issued a Determination alleging that:
[b]y attempting to provide legal services in Virginia and by holding himself out as providing legal services in Virginia, Respondent subjected himself to the disciplinary authority of Virginia pursuant to Rule 8.5(a). Because Respondent's conduct was directed toward a Virginia tribunal, the Virginia Rules of Professional Conduct apply pursuant to Rule 8.5(b)(1).
. . .
By signing the names of three different Virginia attorneys to pleadings without their permission, by signing the other attorneys' names without indicating that the attorneys themselves were not signing the pleadings, and by presenting the purported signatures of the other attorneys in such a way that he deliberately attempted to deceive the reader that the other attorneys had signed the pleadings, Respondent violated Rule 3.3(a)(1) and 8.4(b-c).
Respondent, represented by counsel, submitted an answer to the charges, denying that his conduct violated the Rules of Professional Conduct and asking that the matter be dismissed.
The Virginia State Bar Disciplinary Board ("Board") held a hearing on October 26, 2018 and heard the following evidence.
On May 18, 2016, respondent's associate, W. Jameson Fox, a member of the Virginia Bar, filed a civil action in Virginia which listed respondent as additional counsel. In July 2016, Fox filed two motions to have respondent admitted pro hac vice, but both were denied due to procedural deficiencies. On July 15, 2016, Fox left respondent's employment but never withdrew from the case.
From July through September 2016, respondent, acting without local counsel, filed two requests for issuance of summonses and a memorandum in opposition to a pending demurrer. The memorandum had three signature blocks - one for his former associate Mr. Fox, one for respondent, and one for Mr. Lemma, a Virginia attorney who had not agreed to act as local counsel.
Respondent admitted that he signed all three signature blocks himself, using different handwriting styles for each and giving no indication that he had signed for Mr. Lemma and Mr. Fox or that he had permission to do so. While respondent testified that he had "blanket permission" to sign the pleadings for them, both attorneys testified that they gave no such permission. Finding "the testimony of Messrs. Lemma and Fox to be more credible than the Respondent's testimony," the Board found that "no such permission was given and further that permission to sign for local counsel is irrelevant in that Rule 1A:4(2) invalidates any pleading not signed by local counsel."
In late September 2016, Hasina Lewis, Esq., a member of the Virginia Bar who had never served as local counsel and whose practice was mostly comprised of criminal defense, agreed to serve as local counsel. On October 4, 2016, she signed and filed an amended complaint that had been prepared by respondent. In a December 2016 letter signed by respondent, he included Ms. Lewis' name on his firm letterhead as "Of Counsel" and stated that she was admitted to practice [*3]law in Virginia and Maryland. However, according to Ms. Lewis' testimony, she was never associated with respondent's firm and was not admitted to the Maryland Bar. In January and February 2017, respondent, among other conduct, signed Ms. Lewis' name on several motions and memoranda that he filed. However, Ms. Lewis testified that she had not seen any of the documents before they were filed, and had not given respondent permission to sign for her.
In light of the foregoing, the Virginia Board found that respondent's conduct violated its Rules 3.3(a)(1) and 8.4(b) and (c), as follows:
Rule 3.3(a)(1) prohibits a lawyer from knowingly making a false statement of fact or law to a tribunal. Respondent's repeated counterfeit endorsements of those serving as his Virginia counsel, without their permission and without any indication that he was signing for another, as outlined above, each constituted a false representation to the court. In all instances, with one possible exception, the testimony of the witnesses was that Respondent did not have permission to sign pleadings for the Virginia lawyer. The Board finds the most egregious example of Respondent's misconduct can be found at the Memorandum in Opposition that Respondent signed for two different Virginia counsel and for himself using different handwriting for each signature [fn. omitted]. Respondent testified that he had been in practice for 48 years and that he had extensive experience working with local counsel in states in which he was not admitted to practice. The fact that Respondent's signatory misrepresentations were made knowingly was proven by clear and convincing evidence.
Rule 8.4(b) and (c) provide in pertinent part that it is professional misconduct for a lawyer to: (b) commit a ... deliberately wrongful act that reflects adversely on the lawyers' honesty, trustworthiness o[r] fitness to practice law;' or (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentations which reflects adversely on the lawyer's fitness to practice law.' The Board found by clear and convincing evidence that these repeated incidents of Respondent's signing the names of local counsel, without permission and without indicating that he was signing for another person, were both (1) deliberately wrongful, involving dishonesty, fraud, deceit and misrepresentation, and (2) that they reflected adversely on Respondent[ ]s fitness to practice law. The Board did not find Respondent's testimony that he had blanket' permission to sign for his Virginia counsel to be credible. Respondent's assertion that opposing counsel was at fault for calling into question the merit of his client's claim and warning him and his local counsel about Rule violations were unpersuasive.
Respondent had no disciplinary record in Virginia and an informal Admonition from the Washington, District of Columbia Bar. He testified that he represented clients who have limited financial resources for whom he endeavored to provide access to the judicial system.
In light of its finding that respondent had "fail[ed] to uphold his duties to the profession," the Board issued a Summary Order on October 26, 2018 suspending respondent for a period of 60 days, effective October 26, 2018.
Subsequent to the issuance of the order of suspension, however, counsel for both parties advised the Board that it should amend the order to make clear that "because the Respondent was not licensed to practice law in the Commonwealth of Virginia, the Order should provide for his privilege to practice law in the Commonwealth of Virginia be suspended." Accordingly, on November 30, 2018 the Board issued an Amended Order of Suspension, limited to that purpose only. The Amended Order also restated that the 60-day suspension was "effective October 26, 2018." It is this order which provides the basis of the Committee's reciprocal discipline motion.
By order filed March 12, 2019, the United States Court of Appeals for the Federal Circuit reciprocally suspended respondent from the practice of law for 60 days effective on that date. By [*4]order filed March 21, 2019, the District of Columbia Court of Appeals reciprocally suspended respondent from the practice of law for 60 days, nunc pro tunc to November 13, 2018. By order filed July 18, 2019, the United States Court for the District of Columbia reciprocally suspended respondent from the practice of law for 60 days, nunc pro tunc from May 6, 2019, the date of court's interim suspension order, until July 5, 2019.
In seeking an order pursuant to Judiciary Law § 90(2) and 22 NYCRR 1240.13, the Committee correctly argues that respondent is precluded from raising any defenses except:
(1) that the procedure in the foreign jurisdiction was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
(2) that there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistent with its duties, accept as final the finding in the foreign jurisdiction as to the respondent's misconduct; or
(3) that the misconduct for which the respondent was
disciplined in the foreign jurisdiction does not constitute misconduct in New York.
Respondent asks that, if this Court imposes a sanction, to impose a censure or a lesser penalty, or, in the alternative, that any sanction be imposed nunc pro tunc, pursuant to Matter of Couloute (174 AD3d 1031 [3d Dept 2019]) and Matter of Donohue (171 AD3d 1295 [3d Dept 2019]).
Respondent does not object to the reciprocal sanctions imposed by the other courts and he has accepted the sanctions and served them. However, he notes that some reciprocal suspensions extended beyond the 60 days ordered by Virginia when considering the temporary suspensions imposed by those courts. Respondent states that, notwithstanding his 1970 admission in New York, he has practiced almost exclusively in Washington, D.C., and he has not been retained for nor solicited business in New York State since the 1990s.
The Committee has not filed a response addressing respondent's request for a retroactive suspension.
Respondent does not assert any defenses to the imposition of reciprocal discipline (see Rules for Attorney Disciplinary Matters [22 NYCRR] § 1240.13[b]), nor could he, since respondent, while represented by counsel, was afforded due process in the Virginia disciplinary proceeding and there was sufficient evidence to establish his misconduct. Moreover, respondent's misconduct in Virginia would have violated New York's Rules of Professional Conduct (22 NYCRR 1200.0) rules 3.3(a) (knowingly making a false statement of fact or law to a tribunal), 8.4(c)(conduct involving dishonesty, fraud, deceit or misrepresentation) and 8.4(h)(conduct that adversely reflects on the lawyer's fitness as a lawyer).
As to the appropriate sanction, this Court generally accords significant weight to the sanction imposed by the jurisdiction where the misconduct occurred (Matter of Martin, 141 AD3d 77, 79 [1st Dept 2016]; Matter of Rogge, 51 AD3d 367 [1st Dept 2008]), except on rare occasions (see Matter of Lowell, 14 AD3d 41, 48-50 [1st Dept 2004], appeal dismissed 4 NY3d 846 [2005], lv denied 5 NY3d 708 [2005]). The Committee points out that the sanction imposed by Virginia is in general accord with this Court's precedent involving similar misconduct (see e.g. Matter of Coyne, 136 AD3d 176 [1st Dept 2016]; Matter of Benenati, 136 AD3d 108 [1st Dept 2015]; Matter of Alviar, 21 AD3d 50 [1st Dept 2005]; Matter of Gotbetter, 19 AD3d 1 [1st Dept 2005]; Matter of Vasquez, 1 AD3d 16 [1st Dept 2003]; Matter of Chazan, 252 AD2d 323 [1st Dept 1999]; Matter of Glotzer, 191 AD2d 112 [1st Dept 1993]). We note that the sanction imposed by Virginia is, in fact, somewhat lighter than our precedent.
With regard to respondent's request that if a suspension is imposed we make it retroactive to the discipline imposed by Virginia, we note that this Court has previously imposed suspensions nunc pro tunc where, as here, an attorney has not practiced law in this jurisdiction [*5]during the period of his suspension in the foreign jurisdiction (see e.g. Matter of Gilly, 149 AD3d 230 [1st Dept 2017]; Matter of Coyne, 136 AD3d 176; compare Matter of Pu, 37 AD3d 56, 63 [1st Dept 2006], appeal dismissed and lv denied 8 NY3d 877 [2007]; Matter of Dranov, 14 AD3d 156, 164 [1st Dept 2004]).
Based on the foregoing, and our deference in reciprocal discipline cases to the discipline imposed by the first jurisdiction, reciprocal discipline is appropriate based on the findings and conclusions of the Virginia State Bar Disciplinary Board and a suspension for a period of 60 days is warranted based on the disciplinary action taken against respondent in Virginia.
Accordingly, the Committee's motion should be granted and respondent suspended from the practice of law for a period of 60 days nunc pro tunc to October 26, 2018.
All concur.
Order filed. [March 26, 2020]
The Committee's motion is granted and respondent is suspended from the practice of law in the State of New York for a period of 60 days, effective nunc pro tunc to October 26, 2018, and until further order of this Court.